T.C. Memo. 2001-226


UNITED STATES TAX COURT


EFRAIN J. AND JOSEFINA XUNCAX, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3380-00.                    Filed August 15, 2001.


        Respondent determined a deficiency for
petitioners' 1996 taxable year based primarily on the
disallowance of amounts claimed for cost of goods sold
and business expenses on petitioners' Schedule C,
Profit or Loss from Business.

        <u>Held</u>:  Petitioners are liable for a deficiency as
redetermined herein.

        <u>Held</u>, <u>further</u>, petitioners are liable for the sec.
6662(a), I.R.C., accuracy-related penalty.



Efrain J. and Josefina Xuncax, pro sese.

<u>Jonathan H. Sloat</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  Respondent determined a Federal income tax deficiency for petitioners' 1996 taxable year in the amount of $71,091.00.  Respondent also determined an accuracy-related penalty of $14,218.20 for 1996, pursuant to section 6662(a).

After a concession by respondent, the issues for decision are:

(1) Whether petitioners are entitled to offset gross profits reported on their 1996 Schedule C, Profit or Loss from Business, by claimed cost of goods sold in an amount in excess of that allowed by respondent;

(2) whether petitioners are entitled to Schedule C business expense deductions in excess of the amounts allowed by respondent; and

(3) whether petitioners are liable for the section 6662 accuracy-related penalty.

Additional adjustments made by respondent to petitioners' exemptions, itemized deductions, earned income credit, and self-employment tax are computational in nature and will be resolved by our holdings on the foregoing issues.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed in this case, petitioners resided in Los Angeles, California.

During 1996, petitioners operated a proprietorship under the name of EJX Contractor (EJX). EJX was engaged in the business of sewing materials provided by a contracting manufacturer into a finished product. All materials necessary to complete the items, with the exception of thread, were supplied by the manufacturer. Through such arrangements, EJX was principally involved in the sewing of jeans and shorts. EJX's day-to-day operations during the year at issue were managed by Miguel X. Mendez, petitioners' son.

On the Schedule C attached to their 1996 Federal income tax return, petitioners reported gross receipts from EJX of $485,009, cost of goods sold of $274,109, and total expenses of $183,427. Accordingly, EJX was reflected as having earned a net profit of $27,473. Such receipts and expenditures were computed using the cash method of accounting.

As a result of the subsequent examination of petitioners' return, respondent issued a notice of deficiency making adjustments to the foregoing Schedule C amounts. Respondent

disallowed in full or in part amounts claimed by petitioners for cost of goods sold and business expense deductions, as follows:

| Item | Amount Claimed on Return | Amount Allowed Per Notice of Deficiency |
|---|---|---|
| Cost of Goods Sold | [1] $274,109 | $137,055 |
| Advertising | 1,329 | 0 |
| Car & Truck | 8,665 | 0 |
| Commissions | 6,786 | 0 |
| Depreciation | 13,352 | 13,352 |
| Insurance | 4,967 | 0 |
| Legal & Professional | 8,012 | 0 |
| Office Expense | 4,625 | 0 |
| Rent | 31,200 | 24,000 |
| Repairs | 29,652 | 0 |
| Supplies | 46,712 | 0 |
| Taxes & Licenses | 803 | 0 |
| Travel | 8,623 | 0 |
| Meals | 2,006 | 0 |
| Utilities | 9,974 | 0 |
| Wages | 6,721 | 78,100 |
| TOTAL | $457,536 | $252,507 |

[1] Petitioners' return shows this figure as comprising $50,925 for "Cost of labor" and $223,184 for "Other costs".

Additionally, since issuance of the notice of deficiency, respondent has conceded that petitioners are entitled to deduct as a Schedule C legal and professional expense $725 paid for bookkeeping services.

The allowances described above were based upon invoices and receipts provided to respondent prior to trial and made a part of the record in this case. At trial, Mr. Mendez spoke on behalf of his parents (who apparently have minimal command of English). He testified that EJX's business deteriorated shortly after the year at issue and closed in the fall of 1997. He also indicated that no business records were retained and conceded that petitioners could offer no further substantiation for their claimed costs and expenses. In addition, he explained that efforts to locate the bookkeeper who had prepared EJX's business records as well as petitioners' 1996 return had been unavailing. In this connection, the colloquy set forth below exemplifies Mr. Mendez's testimony on these matters:

> THE COURT: Now, why don't you tell the Court anything you want to state in regard to your family's tax problems.

> THE WITNESS: Yeah. The only thing I can say is that we had--we were in this business quite a long time and we were doing good, since my dad went to--you know, like he got sick and almost everything of the business, it went down like, you know, no--there were no--there were my father not working. So the business, it was not good.

> So what I can tell is that I wish I can have all the proofs we used to--we had for all the other years, which is--you know, we used to do good things. You know, keep the files, but since we decide not to work with it anymore.

> So we just--actually my dad--we don't have no proofs. We just we cannot come with that proof.

The only thing I can--the thing only I can say is that if we have some proof--we did our best to look for it. We--even we went to our bookkeeper who used to take care of our business, but unfortunately he's not longer in that place. So we couldn't get some--you know, like some proofs that we did, you know.

THE COURT: Who made out the income tax return--

THE WITNESS: That's our bookkeeper.

Aside from Mr. Mendez's testimony, which we note was generally imprecise and difficult to follow, the only evidence offered by petitioners at trial was a document dated March 19, 2001, that stated:

I Miguel X. Mendez and Efrain J. Xuncax declare that although we don't have any further proves of 1996 income tax, we affirm that in the year 1996 we approximately paid 15 to 20 employees in cash for their weekly labor. We came to an agreement with our employees that by the end of the year they would receive from us a form 1099. With this purpose it gave them an opportunity to file their income tax for the following year. The amount that this employees received yearly was approximately ten thousands dollars. However, we don't have much proves of these valuable documents therefore, we have tried to locate our bookkeeper for further assistant but we apparently found out that he was no longer in the same business. We write this testimony in the hope that this matter would be more explicable.

At the close of the trial, the Court indicated to petitioners that they would be afforded an opportunity to file a posttrial brief in support of their position. Petitioners have chosen not to do so.

OPINION

I.  Burden of Proof

We begin with a threshold observation regarding burden of proof.  As a general rule, determinations by respondent are presumed correct, and taxpayers bear the burden of proving otherwise.  Rule 142(a).  Section 7491, however, may shift the burden to the Commissioner in certain circumstances.  Section 7491 is applicable to court proceedings that arise in connection with examinations commencing after July 22, 1998, and reads in pertinent part:

SEC. 7491.  BURDEN OF PROOF.

(a) Burden Shifts Where Taxpayer Produces Credible Evidence.--

(1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *

\* \* \* \* \* \* \*

(c) Penalties.--Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.  [See also Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727, regarding effective date.]

Although the record in this case does not reveal when the examination of petitioners' 1996 return began, respondent asserts that the burden is not placed on him under section 7491(a) with respect to the income adjustments at issue and that respondent has met his burden of production under section 7491(c) with respect to the penalties.  We agree.

As regards the adjustments to cost of goods sold and business expenses, and as further explained below, petitioners have failed to offer substantiation for and/or maintain adequate records concerning the disallowed amounts.  Hence, the prerequisites of section 7491(a)(2) for placing the burden on respondent as to these items have not been met.  See also Higbee v. Commissioner, 116 T.C. 438, 441 (2001); Blodgett v. Commissioner, T.C. Memo. 2001-147; H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.

With respect to the accuracy-related penalty, the Commissioner satisfies the section 7491(c) burden of production by "[coming] forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty" but "need not

introduce evidence regarding reasonable cause, substantial authority, or similar provisions." Higbee v. Commissioner, supra at 446. Rather, "it is the taxpayer's responsibility to raise those issues." Id. Because, as will be more fully detailed infra, respondent here has introduced sufficient evidence to render the section 6662(a) penalty at least facially applicable, the burden rests on petitioners to show their entitlement to an exception therefrom.

## II. Adjustments to Income

Computation of the income of a Schedule C business takes into account both cost of goods sold and other business expenses. Cost of goods sold is an offset subtracted from gross receipts in determining gross income. Sec. 1.61-3(a), Income Tax Regs. Accordingly, such costs are not treated as deductions and are not subject to the limitations on deductions contained in sections 162 and 274. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). However, any amount claimed as cost of goods sold must be substantiated, and taxpayers are required to maintain records sufficient for this purpose. Sec. 6001; Newman v. Commissioner, T.C. Memo. 2000-345; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.6001-1(a), Income Tax Regs.

Once the gross income of a business has been calculated, business expense deductions are subtracted in determining net income. Section 162(a) allows a deduction for "all the ordinary

and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Yet as with cost of goods sold, amounts deducted must be substantiated, and records sufficient to establish such deductions must be maintained by the taxpayer. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer adequately establishes that he or she paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must, however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit us to conclude that a deductible expense was incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Furthermore, business expenses described in section 274 are subject to rules of substantiation which supersede the doctrine of Cohan v. Commissioner, supra. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 provides that no deduction shall be

allowed for, among other things, traveling expenses, entertainment expenses, meal expenses, and expenses with respect to listed property (as defined in section 280F(d)(4) and including passenger automobiles) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) The amount of the expenditure or use; (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and (4) in the case of entertainment, the business relationship to the taxpayer of the persons entertained.  Sec. 274(d).

Applying the foregoing principles to the costs and expenditures reported on petitioners' 1996 return, we consider whether petitioners are entitled to amounts in excess of those allowed by respondent.

A.  Cost of Goods Sold

Petitioners claimed cost of goods sold totaling $274,109, of which $50,925 was designated as cost of labor and $223,184 was labeled as "Other costs".  In support of these amounts, petitioners provided respondent with payroll invoices and with a collection of receipts and invoices that seem to relate primarily to purchases of thread.  Respondent aggregated all of petitioners' substantiated compensation-related expenses as deductible wages, discussed further below, and additionally allowed petitioners cost of goods sold in the amount of $137,055,

half of the figure claimed.  Since the receipts and invoices which supposedly substantiate petitioners' "Other costs" total only $5,476, we conclude that they have failed to prove their entitlement to cost of goods sold in excess of what already appears to be a generous allowance by respondent.

B. Wages Expense

On their Schedule C, petitioners designated $50,925 as cost of labor and $6,721 as wages expense.  These amounts add to a total of $57,646 for compensation-related expenditures.  During examination, petitioners provided payroll invoices and receipts for 1996 totaling $55,805.33.  Respondent allowed as a deduction wages expense of $78,100.  Again, respondent would appear to have been generous.  Furthermore, to the extent that certain portions of Mr. Mendez's testimony and the written statement offered by petitioners at trial can be interpreted to mean that additional cash payments were made to employees, such representations are insufficient to support a further deduction.

First, the record is entirely devoid of anything which could corroborate the self-serving averments that cash payments were in fact made during the year at issue.  Second, even if we were willing to accept that cash had been remitted, the record provides no basis for a reasonable estimate of the deductible amount.  The oral testimony contains no numerical information whatsoever, as to either the number or the amount of payments,

and the written statement is both ambiguous and so blatantly
conjectural as to be almost useless for estimation purposes.  The
document states that EJX "approximately paid 15 to 20 employees
in cash" and that "The amount that this employees received yearly
was approximately ten thousands dollars."  Hence, at minimum it
is unclear whether 15 to 20 employees received $10,000 each or
whether 15 to 20 employees received $10,000 in the aggregate.  If
the former, we are doubtful of the statement's veracity.  Wages
and labor costs, both as reported on the 1996 return and as
substantiated, total less than $60,000.  It thus seems highly
unlikely that additional employee payments of $150,000 to
$200,000 were made through less conventional channels and were
mistakenly omitted from petitioners' return.  On the other hand,
if the latter interpretation should hold sway, we note that
respondent's generosity already allows for a deduction of more
than $20,000 beyond the substantiated amount.  Thus, under any
interpretation, petitioners' assertions fall short of showing
their entitlement to further wages expense deductions.

C.  Rent

Rent expense of $31,200 was claimed on petitioners' Schedule
C.  The information provided to respondent on this item consisted
of rental receipts for the 1995, rather than the 1996, taxable
year.  The invoice for December of 1995 shows monthly rent of
$1,750.  Respondent allowed rent expense for 1996 at a rate of

$2,000 per month, for a total of $24,000. Having no basis upon which to conclude that greater amounts were paid, we sustain respondent on this issue.

D. Payments Due on Account of Violations

The record contains documentation relating to amounts assessed by local, State, and Federal agencies on account of various statutory and regulatory violations. Although it is not clear whether petitioners deducted these amounts on their return and, if so, under what classification of expense, we assume that inclusion of the documents in the record is based on petitioners' belief that they support a deduction.

At the outset, we emphasize that section 162(f) explicitly provides that no deduction shall be allowed "for any fine or similar penalty paid to a government for the violation of any law." Accordingly, to the extent that the aforementioned amounts are of a type within the purview of section 162(f), as the majority would appear clearly to be, payment thereof is nondeductible in any event. However, for the sake of completeness, we deal briefly with additional reasons why the documentation offered fails to support increased deductions.

First, the evidence includes bills from the Los Angeles Police Department for amounts imposed due to violations of section 103.206 of the Los Angeles Municipal Code "for excessive false alarms without the required alarm permit". Petitioners

were charged $80 per occurrence for false alarms on February 1,[1] May 12, June 28, and August 28, 1996. The record also contains delinquent status notices dated November 5 and December 3, 1996, concerning the May and the August alarms, respectively. The bills and notices warn that operating an alarm system without a permit is a misdemeanor. Thus, additional impediments beyond section 162(f) are present on these facts. The delinquency notices call into question whether at least some of the charges were paid in 1996, so as to be deductible by a cash basis enterprise in that year.

Second, petitioners provided a "Garment Penalty Assessment Order" from the State of California Department of Industrial Relations, Division of Labor Standards Enforcement, for a violation of section 2678 of the California Labor Code. Cal. Lab. Code sec. 2678 (West 1989 & Supp. 2001). The assessment was issued on October 2, 1996, and the stated grounds involve a failure to maintain accurate records. However, the evidence also includes a letter from the agency dated April 18, 1997, stating that the penalty had not been paid as of that date. Petitioners therefore are entitled to no deduction in 1996.

---

[1] Although the pertinent stipulation references Feb. 2, 1996, as the date of the alarm, the bill specifies an alarm date of "02/01/96". The minor discrepancy is immaterial for our purposes.

Third, the record contains a "Citation and Notification of Penalty" from the State of California Department of Industrial Relations, Division of Occupational Safety and Health, for violations of the California Labor Code. In this notice of October 2, 1996, the agency cites multiple deficiencies in the EJX facility and working environment. Yet the record is again devoid of any proof of payment. Given that another State assessment issued the same date and discussed above remained unpaid in 1997, we are unwilling to assume that this penalty was paid during 1996. Petitioners have not substantiated an expenditure.

Fourth, the evidence includes an agreement between EJX and the U.S. Department of Labor settling alleged violations of the Fair Labor Standards Act. Therein, the EJX agreed "to pay back wages" of $3,557. Additionally, copies of receipts reflecting payments to the Department of Labor totaling $3,557 have been made a part of the record. Nonetheless, even if this settlement is more appropriately viewed as a deductible wages expense, rather than a nondeductible penalty, no further deduction is in order here. Once again, respondent's allowance for wages is large enough to cover this additional amount.

E. License

Petitioners claimed on their Schedule C $803 for taxes and licenses. Respondent disallowed this expense in full. However,

the record contains a garment manufacturing license fee invoice from the County of Los Angeles for $323.75.  The invoice recites that unless payment is received before December 15, 1996, legal proceedings will be instituted.  Handwritten on the invoice is "pagado con check", which Mr. Mendez testified he wrote to signify that the fee was paid by check.  Given this notation and the logical appeal of Mr. Mendez's testimony that the business would not have been able to continue without the license, we are satisfied that EJX did in fact remit the referenced fee in 1996. Petitioners are entitled to a deduction for licenses in the amount of $323.75.

F.  Advertising

Petitioners' Schedule C reflects a deduction for advertising of $1,329, all of which was disallowed by respondent.  The sole item in the record which would appear to be traceable to an advertising expenditure is an invoice from Rick Swinger Photography for "studio fashion photography with model and 6 roles color film shot".  The balance due is shown as $950. Nonetheless, there are again two barriers to permitting a deduction based upon this document.  First, as with many of the invoices previously mentioned, the record is barren of any evidence of actual payment.  Not even a notation on the bill exists to give rise to an inference in petitioners' favor.

Second, the invoice is made out to "24 Karat Gold Jean Co."  When questioned about this document at trial, Mr. Mendez explained:

> THE WITNESS:  This--there were a man came to my shop and asked me if I could sew his garment.  And somehow he start talking about, you know, our business to start because sewing was to--it was no good anymore.
>
> So we tried to do like partnership or so, like I was wanting to sew the clothes that he--our products to start our own business.
>
> And we were going to call it 24 Karat Gold Jeans or so, but we never get to that.
>
> MR. SLOAT:  So whose business--was that a partnership between you and this other person?
>
> THE WITNESS:  Yes.

Because this testimony would seem to confirm that the photography charges were incurred by a business entity other than EJX (namely, a partnership between petitioners' son and an unidentified man), we must conclude that the amount cannot be deducted on petitioners' Schedule C.

G.  Legal and Professional Services

As previously indicated, respondent has conceded that petitioners are entitled to include on their Schedule C $725 for legal and professional services.  This position is based upon an invoice and receipt reflecting payment for bookkeeping services. We accept respondent's concession.

H.  Other Expenses

With respect to the remaining expenses claimed on petitioners' Schedule C and disallowed by respondent, we hold that petitioners have failed to substantiate these deductions. The only other evidence in the record consists of miscellaneous receipts, many of which provide no information regarding the subject of the underlying transaction or the parties thereto. Many others are from restaurants (e.g., McDonald's, Taco Bell, Sizzler), gas stations, and grocery stores.  A significant portion are obviously for nondeductible personal expenditures. Moreover, to the extent that they might relate to the claimed travel, meal, and vehicle expenses, the receipts fall far short of the strict substantiation requirements of section 274.  We sustain respondent's position as to all remaining expenses not previously addressed.

III.  Accuracy-Related Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty in the amount of 20 percent of any underpayment that is attributable to causes specified in subsection (b).  Subsection (b) of section 6662 then provides that among the causes justifying imposition of the penalty are:  (1) Negligence or disregard of rules or regulations and (2) any substantial understatement of income tax.

"Negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title," and "disregard" as "any careless, reckless, or intentional disregard."  Case law similarly states that "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Pursuant to regulations, "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" is declared by section 6662(d)(1) to exist where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000 ($10,000 in the case of a corporation).  For purposes of this computation, the amount of the understatement is reduced to the extent attributable to an item:  (1) For which there existed substantial authority for the taxpayer's treatment thereof, or (2) with respect to which

relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there existed a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

An exception to the section 6662(a) penalty is set forth in section 6664(c)(1) and reads: "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

Regulations interpreting section 6664(c) state:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. * * * [Sec. 1.6664-4(b)(1), Income Tax Regs.]

Furthermore, reliance upon the advice of an expert tax preparer may, but does not necessarily, demonstrate reasonable cause and good faith in the context of the section 6662(a) penalty. See id.; see also Freytag v. Commissioner, supra at 888. Such reliance is not an absolute defense, but it is a factor to be considered. See Freytag v. Commissioner, supra at 888. In order for this factor to be given dispositive weight, the taxpayer claiming reliance on a professional must show, at minimum, that (1) the preparer was supplied with correct information and (2) the incorrect return was a result of the preparer's error. See, e.g., Westbrook v. Commissioner, 68 F.3d

868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Cramer v.
Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th
Cir. 1995); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173
(1978); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Garcia
v. Commissioner, T.C. Memo. 1998-203, affd. without published
opinion 190 F.3d 538 (5th Cir. 1999).

The notice of deficiency issued to petitioners asserted
applicability of the section 6662(a) penalty on account of both
negligence and/or substantial understatement. (The notice also
referenced substantial valuation overstatement as an additional
alternative ground, see sec. 6662(b)(3), but since valuation was
not a focus of this case, we disregard the apparent boilerplate
reference.) Based upon our holdings above, the evidence has now
established that petitioners understated their taxes by more than
the greater of $5,000 or 10 percent of the tax required to be
shown. In addition, we observe that there exists no substantial
authority for deduction of unsubstantiated expenses and that
petitioners' return disclosed no facts related to their claimed
expenses. Accordingly, respondent has satisfied the burden of
production under section 7491(c) with respect to the section
6662(a) penalty for substantial understatement. We also note,
for the sake of completeness, that petitioners' demonstrated

failure to keep adequate records and properly substantiate would be sufficient to sustain respondent's burden for a negligence-based imposition as well.

Furthermore, petitioners have failed to prove their entitlement to relief under the section 6664 exception. An absence of records, due to loss or destruction, cannot standing alone establish that petitioners' deductions were founded on reasonable cause and good faith when made. In addition, the explanation offered for why petitioners retained no records from EJX can only be described as vague at best. The role of their alleged return preparer, who we note did not sign the return, is also less than clear. More importantly, there has been no showing that the return preparer was provided with accurate information such that any errors are attributable to him and not to petitioners. We hold that petitioners are liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered
under Rule 155.